**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| RENATA BUTAUSKIENE,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | Case No. 1:24-cv-4753 |
| v.     ) | |
| ) | |
| BURR RIDGE COMMUNITY     ) | |
| CONSOLIDATED SCHOOL DISTRICT 180,     ) | |
| ) | |
| Defendant.     ) | |

**COMPLAINT AT LAW**

NOW COMES Plaintiff Renata Butauskiene ("Butauskiene") by and through her

attorneys Jared M. Schneider and Aaron R. Brand of Schneider Law, P.C., and for her Complaint

against Defendant Burr Ridge Community Consolidated School District 180 (the "School

District"), states as follows:

**INTRODUCTION**

1. This is a complaint for unlawful discrimination and retaliation. Butauskiene holds a

sincere, closely held religious belief opposing vaccinations. In 2021, the School District

implemented a policy requiring all of its employees to obtain one of the COVID-19 vaccinations.

After filing a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") due to the School District's intense unwillingness to accept her religious objections,

the School District granted Butauskiene a religious accommodation exempting her from receiving

the mandated vaccination. However, because of her EEOC Charge and her refusal to

compromise her religious beliefs, Defendant harassed, maligned, and discriminated against Butauskiene, subjecting her to a hostile work environment before finally terminating her.

## PARTIES AND VENUE

2. For over 20 years, Plaintiff Butauskiene worked in a variety of roles for the School District's constituent schools: Burr Ridge Middle School (the "Middle School") and Anne M. Jeans Elementary School (the "Elementary School"). At the time of filing, she is 55 years of age, and is a citizen of Illinois.

3. The School District is a consolidated school district located in the city of Burr Ridge, county of DuPage, Illinois.

4. This Court has subject matter jurisdiction under 28 U.S.C. §1331, as this case presents a federal question. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because the School District resides in the Northern District of Illinois and the events giving rise to the claim occurred in the Northern District of Illinois.

## BACKGROUND

**A.    Butauskiene's Sincerely Held Religious Beliefs**

5. At all times relevant, Butauskiene is and has been a devout believer in God, who created the universe, humanity, and the natural laws that govern both. Butauskiene firmly believes that God has graciously given her body an immune system that enables her to live life on earth.

6. Based on her belief in God's sovereign creation, Butauskiene refuses to receive any man-made vaccinations because it interferes with the gift she received from God, that is, her immune system.

7. Butauskiene humbly believes that receiving a vaccine would betray her trust in God by implying that the immune system needs further support through the injection of materials not present upon the creation of her human form.

8. Not only does she believe receiving a vaccination would betray her trust in God, but Butauskiene fears that such a violation of her deeply held convictions could jeopardize her relationship with God and risk eternal damnation.

9. As an example of her commitment to her faith in God to sustain her health and immunity, Butauskiene has never received any vaccination in her entire adult life.

10. Believing that her spiritual health is closely tied to her physical health, Butauskiene consciously practices prayer and meditation whenever she begins to feel physically ill.

**B.      Employment History with the School District**

11. Butauskiene began working for the School District in 1998.

12. The School District initially hired Butauskiene as an instructional teaching assistant in the library at the Elementary School.  In 2004, she began working in the Middle School's library.

13. Butauskiene went above and beyond what teaching assistants are required to perform: she developed curricula for the school libraries; oversaw after-school and summer programs; voluntarily participated in parent-teacher conferences that occurred outside contractual hours; and frequently translated for local Lithuanian, Polish, and Russian families whose children attended the schools in the School District.

14. One glowing recommendation from the fifth grade teachers at the Middle School plainly stated that Butauskiene is worth her weight in gold.

15. Throughout her tenure with the schools, her colleagues and fellow staff recognized and praised Butauskiene's perseverance, dedication, and resourcefulness for the benefits she conferred on the School District.

16. Ahead of the 2018-2019 school year, the School District de-emphasized the importance of school libraries in early education and ultimately eliminated the position of library aide. Intending to keep Butauskiene on staff, the School District converted her longtime position library assistant to Paraprofessional Classroom Aide ("Paraprofessional") beginning with the 2018-2019 school year.

17. As a Paraprofessional, Butauskiene did not receive the same benefits for which her unionized colleagues collectively bargained, such as annual vacation days. Instead, she signed an annual agreement setting out the details of her employment with the School District for the upcoming school year ("Work Rules").

18. Because Butauskiene was a Paraprofessional, special education coordinator Tenika Pickens ("Pickens") evaluated her annually. The evaluation consists of five categories: (1) Meeting the Needs of Students; (2) Assisting in the Classroom; (3) Work Habits and Behavior; (4) Work Relationships; and (5) Contribution to School Environment.

19. Each category had between three and thirteen proficiencies defined, and a range of four standards for each proficiency could be marked to rate the evaluated personnel. Those standards were "Exceeds Standards", "Meets", "Needs Improvement*", and "Does Not Meet Standard*". The asterisk (*) denoted that "written comments must be submitted for any area marked" with the lower two standards.

20. On her 2019-2020 Paraprofessional Evaluation, Butauskiene met or exceeded standards for all proficiencies on the entire evaluation. Under the Work Habits and Behavior category, Pickens marked Butauskiene exceeded standards on eight out of the nine proficiencies. Pickens marked that Butauskiene "Meets" the proficiency to maintain professional responsibility with her attendance record. Pickens also left the following explanatory comment for the section:

> Renata is an active participant in team meetings and is not shy to express herself. She is very organized and is wonderful in the classroom keeping everything labeled and organized. When there is a shortage or assistance needed elsewhere, she volunteers. She completes all duties expected of her. Renata has missed 7.5 days during the 2019-2020 school year.

21. To accept a position for the 2021-2022 school year, Butauskiene signed the upcoming year's Work Rules on March 25, 2021.

22. Section 13 of the Work Rules set forth the School District's policy for Paraprofessionals' use of sick leave for that school year. Each Paraprofessional in the district received ten sick leave days at full pay each year. "Sick leave shall be interpreted to mean personal illness, quarantine at home, or serious illness or death in the immediate family or household. . . . After an absence of three days or more, the employee shall furnish a medical certificate upon returning to work."

23. Because of her long tenure with the School District, Butauskiene accumulated a number of rollover sick days. She entered the 2021-2022 school year with a balance of 93 sick leave days.

**C.     The School District's COVID-19 Vaccination Mandate and Butauskiene's Religious Objections**

24. On August 26, 2021, Illinois Governor J.B. Pritzker issued Executive Order 2021-20 requiring COVID vaccinations for all Illinois school personnel. Notably, Executive Order 2021-20 exempted individuals from the requirement to be vaccinated against COVID-19 if "vaccination

would require the individual to violate or forgo a sincerely held religious belief, practice, or observance."[1]

25. On Tuesday, August 31, 2021, Superintendent Thomas Schneider ("Dr. Schneider") sent a letter to all School District staff who had not provided proof of vaccination against COVID-19 to the School District's health office.  The School District informed the staff members that they would be required to provide a negative PCR COVID test result prior to the start of school on September 7, 2021, and continue to do so every Monday morning until school personnel were fully vaccinated (two weeks after the final required vaccination shot).  The School District explicitly stated that it would not provide nor pay for unvaccinated staff to complete testing to be in compliance, but it made SHIELD testing available for students and vaccinated staff concerned about close contacts.

26. Thereafter, Dr. Schneider and the School District set a goal of one hundred percent vaccination for all staff.

27. On September 17, 2021, Butauskiene submitted her initial religious exemption request via a letter to the School District.  She told the School District that in accordance with her deeply held spiritual beliefs, she could not consent to vaccination.

28. Accompanying her exemption letter, Butauskiene submitted the School District's required religious exemption request form.  Question five of the form asked her to provide current up-to-date vaccination records or previous vaccination exemption documentation.  Butauskiene answered that she had not been vaccinated since at least 1995 (when she emigrated to America) and opposes vaccination for religious reasons.

---

1 Office of Governor JB Pritzker, Ill. Exec. Order No. 2021-20 §4(e)(2) (Aug. 26, 2021).

29. The School District denied Butauskiene's request for a religious exemption to the vaccine requirement.  In its denial letter, the School District flatly rejected her conviction that receiving the COVID-19 vaccine would cause her to violate or forgo sincerely held religious beliefs.

30. In response to the School District's denial, Butauskiene sent a letter in support of her religious exemption request on October 1, 2021.  In her letter, she professed that her religious beliefs extended beyond the COVID-19 vaccine and applied to all vaccinations.

31. On October 5, 2021, the School District again rejected the sincerity of her religious beliefs.

32. Following a meeting with Dr. Schneider, Middle School principal Julie Bartell, and School District's business manager Dr. Ben Nowakowski, Butauskiene received another letter from the School District denying her request for an exemption.  In this letter, the School District accused Butauskiene of lying about her religious beliefs.

33. For three more weeks, the School District continued to pester Butauskiene for proof of her religious convictions in the form of notes from her former health care providers.

34. On November 2, 2021, the School District set a pre-disciplinary hearing because Butauskiene was not on the list of approved unvaccinated staff. Dr. Schneider wrote that he would recommend to the School District that any unvaccinated staff be terminated at the board's upcoming meeting on December 13, 2021.

35. Confused by the escalated threat of termination, Butauskiene sent a letter in response on November 6, 2021.  She told the School District that she had contacted the family doctor listed on her health forms, but his office had no available record of her last visit.  Butauskiene stressed in

her letter that she would be more than willing to speak to anyone about her deeply held religious beliefs. She informed the School District that she had filed a job discrimination complaint with the EEOC because of Dr. Schneider and the School District's failure to accommodate her religious beliefs.

**D. The School District's Treatment of Butauskiene Following Her EEOC Complaint**

36. Dr. Schneider told Butauskiene that because she was unvaccinated, her schedule and classroom placements would be changed to keep her from being in one place for more than fifteen minutes.

37. Notwithstanding this instruction from Dr. Schneider, on the morning of November 19, 2021, Ritchey changed Butauskiene's schedule to cover back-to-back classes for a gym teacher who was out sick with COVID-19.

38. On November 23, 2021, the School District suspended Butauskiene without pay to last until she began the vaccination process or the School District terminated her. Although the suspension would not begin until the Monday after Thanksgiving, November 29, 2021, the School District confiscated Butauskiene's keys, computer, and security fob and locked her out of her district email account immediately after giving her notice of the suspension.

39. The very next day, however, on November 24, 2021, the School District granted Butauskiene's request for a religious exemption from the COVID-19 vaccination requirement. Dr. Schneider offered no apology for his own actions or the School District's treatment of Butauskiene. Instead, he blamed her for causing the confusion.

40. Although Butauskiene received her things upon her return to school on November 29, 2021, her security fob did not provide her with the access required for her to fulfill her duties. She sent an email on December 1, 2021, but the School District did not reactivate or reprogram her fob for two months.

41. On January 24, 2022, Carrie Honer, the Middle School's secretary, sent a district-wide email reminding all staff that any absences of three days or more will require a physician's note to return to work.

42. Yet that same day, Elementary School principal Tracy Ritchey ("Ritchey") told Butauskiene in a meeting that refusing to provide a physician's note for *any* sick leave used would result in docking her pay and issuance of a disciplinary written warning for refusal to comply with an administrative directive.

43. For the rest of the 2021-2022 school year, the School District unilaterally altered Butauskiene's Work Rules agreement with the district so that all of Butauskiene's absences, even for one day, would require proof from a physician.

44. Other similar-situated employees only had to provide a physician's note if they were absent three days or more.

45. Like many, if not the vast majority of people, Butauskiene does not go to the doctor for minor illnesses because it is unnecessary and spreads disease, and instead simply stays home and rests.

46. On February 11, 2022, after working for a few hours at the Elementary School, Butauskiene began to feel ill and used a portion of her sick leave for the second half of the day.

Ritchey immediately demanded from Butauskiene documentation of the medical reason for her absence, to be submitted no later than February 18, 2022.

47. On February 24, 2022, as on previous occasions, Butauskiene pointed to the deeply personal nature of her faith and the difficulties she faced in certifying her illness according to the School District's strict requirements. Butauskiene requested an extension to seek independent legal advice regarding the School Code and how she could provide the documentation the School District was requiring.

48. On February 25, 2022, The School District denied Butauskiene's request for an extension to seek independent legal advice on the School Code. The School District further docked Butauskiene's pay for sick days she had taken, and threatened further disciplinary action for failing to provide the demanded documentation.

49. On March 7, 2022, the School District approved the hiring of Dr. Kerry Foderaro ("Dr. Foderaro") to conduct a candidate search for a new district superintendent to replace Dr. Schneider, who would be retiring at the end of the 2022-2023 school year. Among other things, Dr. Foderaro asked for input from the School District's various employment groups, including but not limited to the Paraprofessionals.

50. To prepare, Butauskiene met with several Paraprofessionals and memorialized their list of values or qualities that the Paraprofessional staff hoped to see in the future superintendent.

51. After a superintendent search meeting on April 20, 2022, Butauskiene presented this list to Dr. Foderaro.

52. On information and belief, Ritchey approached several Paraprofessional staff the following day and demanded that they disavow Butauskiene's statements or face discipline, up to and including termination. Subsequently, Butauskiene received emails from over half a dozen Paraprofessionals expressing how she did not represent their views.

53. Yet just one week later for her Paraprofessional Evaluation of the 2021-2022 school year, Pickens marked all of the proficiencies under the "Work Relationships" category as meeting the standard. She also wrote that Renata collaborates effectively with team members and maintains a professional working relationship.

54. In the remainder of the evaluation, Butauskiene continued to meet the standards on all proficiencies except one. For "Maintains professional responsibility with attendance record," Pickens scored Butauskiene as "Needs Improvement," though no written comment accompanied the rating, contrary to the instructions of the School District's evaluation form.

55. The following year, for the 2022-2023 school year, the School District altered its policy around taking sick leave as a direct response to Butauskiene. The altered Section 13 of the 2022-2023 Work Rules read:

> An employee must provide a physician's certificate upon their return to work verifying that an absence is for the purposes of sick leave, as defined above, whenever: (1) the absence is three consecutive work days or more, (2) the employee already has used ten paid sick leave days in that school year, or (3) the District otherwise deems a physician's certificate necessary.

56. Over the course of the 2022-2023 school year, Butauskiene continued to perform her duties in the same manner that the School District had seen over two-plus decades of teaching.

57. During that same school year, the School District deemed every one of Butauskiene's absences from March 9, 2023 to May 25, 2023 as requiring a physician's certificate, despite single-day absences each time and Butauskiene remaining under her allotted ten sick leave days for the school year.

58. On April 7, 2023, Pickens conducted Butauskiene's Paraprofessional Evaluation for the 2022-2023 school year.

59. Ritchey, however, independently modified the evaluation responses and Pickens refused to sign off on the evaluation. Instead of Pickens, who was Butauskiene's immediate supervisor, Ritchey signed the document on May 31, 2023, almost two months after the observation date and in contravention of Butauskiene's Work Rules, which stated that "job performance shall be evaluated by his/her direct supervisor."

60. Similarly-situated employees within the School District who did not have religious objections to vaccination or had not complained to the EEOC were not subject to the same shifting standards as the School District required of Butauskiene.

61. As an example, Dr. Schneider had more than sixty absences from school in his last year. In addition, other Paraprofessionals within the district would use their sick leave days to attend graduation ceremonies, family reunions, or take vacation.

62. As the 2022-2023 school year drew to a close, the School District again demanded that Butauskiene produce "documentation from a third party who can verify that your absences were for illness." Dr. Schneider sent her letters dated May 26, 2023, May 31, 2023, and June 1, 2023,

noting on each that the "written warning is being placed in your personnel file as a disciplinary record."

63. On June 1, 2023, Butauskiene emailed Dr. Schneider requesting to meet with him because she did not understand his vehement insistence on proof of her absences.

64. In a letter dated June 2, 2023, Dr. Schneider refused to meet with Butauskiene, claiming falsely, and without reference to specific instances, that at previous meetings she "has been contentious, disrespectful and created a hostile environment."

65. Despite previously signing off on Butauskiene's acceptance of the 2023-2024 school year's Work Rules, the School District set a disciplinary hearing with incoming Superintendent Charles Kyle ("Dr. Kyle") on July 18, 2023. The School District ordered Butauskiene to remove all her personal items from the school by the end of the day, June 2, 2023. It also stated that her "presence on district grounds before [the disciplinary hearing] will be considered trespassing."

66. Just before Butauskiene met with Dr. Kyle on July 18, 2023, she observed Dr. Schneider entering Dr. Kyle's office, even though Dr. Kyle had already taken over all duties as superintendent for the School District. The disciplinary meeting lasted about 90 minutes, but Dr. Kyle never reviewed Butauskiene's personnel file to confirm her attendance records or her years of service. Instead, he relied only on the information prepared by Dr. Schneider.

67. On July 24, 2023, Butauskiene attended the School District's board of education meeting where her contract for renewal would be considered. The board never asked her any questions. The board then entered a closed session, where it voted to terminate Butauskiene's employment with the School District but did not immediately inform her following its decision.

68. The School District did not mail out the termination letter until August 16, 2023, the day before the first day of classes for students.

69. Adding to her confusion about her employment status, Butauskiene did not even receive the letter until August 18, 2023, the day after classes began.

70. On or about March 25, 2024, the EEOC provided Butauskiene with her Right to Sue Notice, a copy of which is attached and incorporated to this Complaint as *Exhibit A*.

<u>COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT</u>

71. Butauskiene incorporates and re-alleges paragraphs 1 through 70 as if fully set forth herein as this paragraph.

72. Butauskiene's religious beliefs, which prohibit her from accepting or obtaining any of the COVID-19 vaccines, are bona fide, sincerely-held religious observances and practices.  Her beliefs also lead her to engage in prayer and meditation for healing whenever she feels sick, and she rarely sees a doctor, dentist, or other medical professionals.

73. Based on her deeply held religious beliefs, Butauskiene sought an exemption from the School District's mandatory COVID-19 vaccination policy.

74. The School District acknowledged that her religious beliefs are sincere when it granted her COVID-19 vaccination exemption.  Having lost the legal grounds to terminate Butauskiene's employment based on her unvaccinated status, the School District then manipulated its own policies to treat Butauskiene differently than other similarly-situated employees.

75. For almost two years, Dr. Schneider and Ritchey held Butauskiene to a different standard than other similarly-situated employees, requiring her to provide a physician's certification for

minor illnesses lasting less than three days, while others that did not have religious opposition to vaccination were permitted to simply call in sick, even when they were not actually ill.

76. The School District forced Butauskiene to jump through administrative and bureaucratic hoops that it did not require from similarly situated employees, whether vaccinated or unvaccinated.

77. Contrary to the Work Rules that she had signed for the 2021-2022 school year, the School District demanded that Butauskiene submit a doctor's note for every one-day (or less than one-day) absence she took. Yet all other similarly situated employees in the district were instructed to continue submitting doctor's notes for absences of three days or more.

78. The School District docked Butauskiene's pay, refused to credit her for use of sick leave to which she was entitled, applied its Work Rules differently to her than to other similarly situated employees, and ultimately terminated Butauskiene's employment.

79. Under the constant threat of disciplinary action, up to and including termination, the School District made Butauskiene feel as though she was walking on egg shells every day she went to work.

80. Butauskiene felt ridiculed, intimidated, confused, and condescended to by the persistent demands from Dr. Schneider and Ritchey, her immediate supervisors.

81. The School District's religious discrimination violates Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*, by discriminating against Butauskiene because of her sincerely held religious beliefs. The School District's misconduct resulted in Butauskiene suffering a loss of employment, loss of dignity, loss of salary and other employment benefits, and caused her severe

emotional distress. The School District's actions also caused Butauskiene to suffer a loss of reputation among her former peers and community.

## COUNT II – RETALIATION IN VIOLATION OF TITLE VII

82. Butauskiene incorporates and re-alleges paragraphs 1 through 81 as if fully set forth herein as this paragraph.

83. 42 U.S.C. §2000e-3(a) prohibits employers like the School District from discriminating against any of its employees because of either opposition to the employer's unlawful employment practices or because the employee filed a Charge of Discrimination with the EEOC.

84. Here, Butauskiene sought a religious exemption to the School District's vaccination mandate.

85. Instead of accommodating her sincerely-held religious beliefs by allowing her to provide negative COVID-19 tests in lieu of vaccination, the School District doggedly pursued Butauskiene to produce medical records in an attempt for her to negate her religious beliefs, then punished her when she could not do so.

86. After months of denying Butauskiene's exemption request, and upon learning that Butauskiene filed a Charge of Discrimination with the EEOC because of its unlawful employment practices arising out of its failure to accommodate her religious beliefs, the School District accommodated her beliefs.

87. Instead of forcing Butauskiene to succumb to its vaccination mandate, the School District superficially updated its Work Rules and internal policies in direct response to Butauskiene's

religious beliefs and practices. But these updated rules and policies were applied unequally to Butauskiene.

88. Indeed, the School District subjected Butauskiene to far more scrutiny than her similarly situated colleagues. It twisted her religious objections to vaccination and traditional medicine—the basis of her initial EEOC charge—into grounds for docking her pay, changing the School District's sick leave policies, and ultimately terminating her.

89. From November 2021 to June 2023, the School District created a pretextual record of events to support its termination of Butauskiene's employment. It called her inability to provide documentation "insubordination", despite Butauskiene's many attempts to find a reasonable middle ground.

90. For the foregoing reasons, the School District violated 42 U.S.C. §2000e-3(a) by retaliating against her for opposing the School District's unlawful employment practice (failing to accommodate her religious opposition to vaccination) and for filing her Charge of Discrimination with the EEOC, as evidenced by its unequal application of the sick-leave policy and the creation of a hostile work environment.

WHEREFORE, Plaintiff Renata Butauskiene prays this Court enter a judgment in her favor and against Defendant Burr Ridge Community Consolidated School District 180 in an amount to be proven at trial for her back pay, front pay, lost benefits, and compensatory damages; her attorney's fees and costs; and all such other relief as this Court deems fair and just.

**Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury.**

Dated: June 7, 2024                                        Respectfully submitted,
                                                          RENATA BUTAUSKIENE

By:  _/s/ Aaron Brand_____

Jared M.  Schneider, Esq. (ARDC # 6318314)
Aaron Brand, Esq. (ARDC # 6323671)
SCHNEIDER LAW, P.C.
400 West Seventh Street, Suite 105C
Bloomington, Indiana 47404
Tel: (812) 758-4888
Email: jared@schneiderpc.com
        aaron@schneiderpc.com